`UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STERRY STREET AUTO SALES, INC.,
     Plaintiff,

v.                                CIVIL ACTION NO. 1:20-10798-MPK[1]

CUMMINS INC.,
     Defendants.

MEMORANDUM AND ORDER
ON MOTION TO DISMISS BY CUMMINS INC. (#5).

KELLEY, U.S.M.J.

I.  Introduction.

On April 10, 2020, plaintiff, Sterry Street Auto Sales, Inc., a Rhode Island corporation with a principal office in Attleboro, Massachusetts, filed a complaint against defendant, Cummins Inc., an Indiana corporation with a principal office in Columbus, Indiana, in the Massachusetts Superior Court, Bristol County. (#1-1.) On April 23, 2019, plaintiff filed an amended complaint, seeking a declaratory judgment (Count I), and alleging breach of contract (Count II) and unfair and deceptive trade practices pursuant to Mass. Gen. Laws ch. 93A, § 11 and 176D, § 3 (Count III). (#10 at 29–38.)[2] The following day, defendant filed a notice of removal to this court pursuant to 28 U.S.C. § 1332 (diversity of citizenship). (#1.)

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 29 U.S.C. § 636(c). (#8.)

[2] The parties do not dispute that Massachusetts has personal jurisdiction over defendant pursuant to Mass. Gen. Laws ch. 233A, § 3, 231A, § 1, and 93A, § 11, as the actions of which plaintiff complains occurred substantially within the Commonwealth. *See* #10 at 29.

On May 1, 2020, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (#5.) The motion has been fully briefed. (## 6, 9-1, 13.)

II. <u>Facts</u>.

The court distills the following facts from plaintiff's amended complaint, the operative pleading. (#10 at 29–38.)

Plaintiff markets itself as a "towing and recovery service company with a significant fleet of vehicles operating throughout Southern New England." *Id.* at 30. Defendant is "an American Fortune 500 corporation[,]" which "designs, manufactures, and services engines and related equipment, and offers insurance contracts[.]" *Id.*

Around August 2017, Peter Tilley, a dealer account executive employed by defendant, contacted plaintiff, reviewed plaintiff's fleet, and "made a series of recommendations that included the purchase of [defendant's] Encore Xtra™ warranty for its fleet of trucks." *Id.* Specifically, Tilley recommended that plaintiff purchase defendant's "[s]tandard extended warranty [and] aftertreatment coverage" for truck no. 92. *Id.* Defendant's brochure advertised the warranty as follows:

> Encore Xtra is an in-service extended protection plan designed to reduce unexpected downtime and provide increased peace of mind.
>
> Encore Xtra™ Details:
> - 1 year/100,000 option for ISX12, ISX15, ISX12 G, or ISLG
> - 2 year/200,000 option for engines under 5 years/550,000 miles from DIS
> - Coverage has no deductible
> - Coverage is transferrable
> - Coverage can be purchased by original or subsequent owners
> . . . .
>
> To qualify for the program, engines must pass a full inspection performed by an authorized [defendant] deal or distributor . . . . Encore Xtra coverage begins on the date the program is issued to the owner and ends at the time or miles specified on the Customized Assurance Plan certificate.

*Id.* at 30–31.

Around January 2019, after defendant allegedly "continued to pressure [plaintiff] to purchase warranty protection and advised that 'the price is increasing if the coverage hasn't been paid by Jan[uary] 1st[,]" plaintiff purchased warranty coverage on seven of its fleet vehicles, including truck no. 92. *Id.* at 31. It chose the Encore Xtra Plan 1 (the warranty or warranty coverage), which defendant advertised as the "most comprehensive package." *Id.* Plaintiff paid the cost of coverage, "$20,650 ($2,950 x 7 trucks)[,] upfront and in full[,]" as defendant "demanded" that it do so. *Id.* Defendant issued Assurance Plan certificates the same month. *Id.* "In connection with the issuance of warranty coverage, [defendant] inspected all seven of [plaintiff's] trucks, and all seven [, including truck no. 92,] passed inspection and qualified for coverage." *Id.*

On February 13, 2019, plaintiff brought truck no. 92 to a mechanic, the Peterbilt Store New England LLC ("the Pete Store") for diagnosis of a turbocharge failure. *Id.* at 29, 31. The turbocharger and piston were "specifically listed in [defendant's] literature as covered [engine] components[]" in the warranty, and the Pete Store's "branch manager, Brandon Merle, opened a technical service request, SR# 1-98531028352, to diagnose the cause of the failure." *Id.* at 31. Although truck no. 92 had passed inspection less than two months earlier, defendant claimed that, "[t]o move forward with [processing the warranty,] we need to get all service records [and] will have to look at all the potential components that could cause this type of failure and rule that they are intact or not." *Id.* at 32. Defendant's service manager, Shawn Hutchins, then determined that all of the components that would cause truck no. 92's turbo charge failure were intact. *Id.* On March 7, 2019, despite the fact that truck no. 92 passed defendant's engine inspection less than a month before, Hutchins concluded as follows:

> I feel that a workmanship issue with the first turbo replacement is NOT the reason for the second turbo failure. These turbo failures are due to a previous repair

> event/failure where proper clean care and[/]or repair plan were not done correctly. This job should be a customer billable job. No warranty assistance.

*Id.* Neither Hutchins, nor any other employee of defendant, shared this determination with plaintiff for over six months, despite being asked multiple times and having several opportunities to do so.

*Id.* at 32–33.

> On September 18, 2019, plaintiff sent defendant the following message:

> Good morning[,] we were just wondering what's going on with the truck that is at the Pete store in need of motor repair? [We have] provided all paperwork that [was] requested. . . . This truck has been down since February 15, 2019 (7 months) unacceptable. As all parties are aware this truck is under warranty as Peter [Tilley] instructed us [that] we would be covered in case of a failure.

> PLEASE ADVISE US [AS] TO THE STATUS OF THIS CLAIM !!!!

*Id.* at 33. Plaintiff contacted defendant again on at least two different occasions following the September 18th message, to no avail. *Id.* Defendant did not respond to advise plaintiff that it would not cover the repairs to the truck until September 25, 2019. *Id.*

> Over the course of the next several weeks, plaintiff "repeatedly sought documentation of the reason for" defendant's denial of warranty coverage, but defendant "steadfastly insisted" that all requests for additional information should go to the Pete Store. *Id.* at 34. On January 8, 2020, plaintiff sent defendant a Chapter 93A demand, to which defendant responded that the turbocharge failure was caused by a pre-existing failure and that the warranty plan "specifically states in relevant part [that] '[p]re-existing failures are not covered by [the] [p]lan." *Id.* Although the warranty states that it "covers failures of . . . [e]ngine components which result, under normal use and service, from defects in [defendant] material or factory workmanship[,]" the warranty does not contain this specific language. *Id.*[3]

---

[3] Defendant attaches a copy of the warranty to its memorandum in support. (#6 at 4 (citing #6-1).) The First Circuit has repeatedly cautioned that "[o]rdinarily, a court may not consider any

Plaintiff claims that defendant's actions have caused it to incur damages for the purchase price of defendant's warranty plan, "plus the loss of use of truck no. 92 for nine months, and the cost to fix truck no. 92[.]" *Id.* Plaintiff seeks damages for the repair to the truck in the amount of $34,664, "consequential damages for the extended loss of use of truck no. 92 in the amount of $235,728"; "$20,650 for its purchase of the Encore Xtra Protection Plan coverage"; and "three times the actual damages of $291,042, plus statutory interest, costs, and statutory attorney's fees" under Mass. Gen. Laws ch. 93A, § 11. *Id.* at 35, 37. Plaintiff also seeks a declaratory judgment, stating that defendant "is obligated to provide coverage of the repairs to truck no. 92"; and granting plaintiff "all such further relief as justice may require[.]" *Id.* at 35.

### III.   Legal Standard.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1,

---

documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Graf v. Hospitality Mut. Ins. Co.*, 754 F.3d 74, 76 (1st Cir. 2014) (internal citations and quotation marks omitted). However, "there is a narrow swatch of materials outside the complaint itself that may be considered on a motion to dismiss for failure to state a claim." *Ríos-Campbell v. U.S. Dep't. of Commerce*, 927 F.3d 21, 25 n.2 (1st Cir. 2019). "[W]hen . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotation marks omitted), *cert. denied*, 555 U.S. 995 (2008); *Yacubian v. U.S.*, 750 F.3d 100, 102 (1st Cir. 2014); *United Auto., Aerospace, Agric. Implement Workers of Am. Intern. Union v. Fortuno*, 633 F.3d 37, 39 (1st Cir. 2011).

The factual allegations within plaintiff's amended complaint, are "expressly linked to" the contents of the warranty. Plaintiff does not contest the authenticity of the warranty and, in fact, notes in its memorandum in opposition that it "pointed to the same document [in its First Amended Complaint] for support of its claim of coverage for truck no. 92's turbocharger issues[.]" (#9-1 at 13.)

7 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Parker v. Landry*, 935 F. 3d 9, 14 (1st Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678) ("Plausibility is not equivalent to probability but it nevertheless demands a showing that is 'more than a sheer possibility.'")). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

IV.  Discussion.

For the reasons explained below, defendant's motion to dismiss (#5) is GRANTED to the extent that plaintiff's claim for declaratory relief (count I) and plaintiff's claim for unfair and

deceptive practices pursuant to Mass. Gen. Laws ch. 176D, § 3 (within count III) are DISMISSED. Defendant's motion to dismiss is DENIED in all other respects.

A.  Count I: Declaratory Judgment.

Defendant argues that plaintiff's claim for declaratory judgment should be dismissed because the relief sought duplicates the relief sought under plaintiff's breach of contract claim. (#6 at 3–4.) The court agrees with defendant's arguments. "Because [the] case has been removed to federal court and declaratory judgment is procedural, the question of whether [the c]ourt may grant a declaratory judgment must be viewed under the standard of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Rose v. Bank of Am.*, No. 16-11558-FDS, 2017 WL 6063061, at *2 n.1 (D. Mass. Dec. 7, 2017) (citation omitted). Federal courts have "broad discretion" to grant or deny declaratory relief. *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Here, the relief plaintiff asks for under its declaratory judgment claim – that the court "issue a judgment against [defendant], declaring that it is obligated to provide coverage of the repairs of truck no. 92" – is nearly identical to the relief it seeks under its breach of contract claim, discussed *infra* – noting that it "has suffered breach of contract damages for repair of truck no. 92 . . . ." (#10 at 35.) Courts have dismissed claims for declaratory relief under similar circumstances. *See,* e.g., *Gormally Broad. Licenses, LLC v. Charter Commc'n. Holding Co., LLC*, No. 3:16-30152-MGM, 2017 WL 3131986, at *6 (D. Mass. Feb. 28, 2017) (citation omitted) ("declaratory judgment would be duplicative of [plaintiff's] breach of contract claim, the latter of which will determine whether and to what extent [defendant] breached its obligations under the [a]greement").

Plaintiff's counterargument – that declaratory relief is necessary because it is unclear whether the warranty "document [attached to defendant's motion] constitutes part or the entirety

of the parties' contract[,]" and it needs "a declaration of what constitutes the four corners of the parties' contract" (#9-1 at 8, 13) – is unavailing. While plaintiff correctly points out that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate[,]" *id.* at 7 (quoting Fed. R. Civ. P. 57), "[t]he demand for relief shall state with precision the declaratory judgment desired[.]" Fed. R. Civ. P. 57 (advisory committee note); *see also Tuohig v. Principal Ins. Grp.*, 134 F. Supp.2d 148, 152 (D. Mass. 2001) (dismissing plaintiffs' claim for declaratory relief when plaintiffs "provided no explanation as to why this is such an appropriate case"). Here, plaintiff does not ask for "a declaration of what constitutes the four corners of the parties' contract" in its amended complaint or anything of the like. Further, defendant notes in its reply memorandum that "[t]here is no dispute that the Encore Warranty is the contract[.]" (#13 at 1.)

B.  Count II: Breach of Contract.

Defendant argues that it cannot be liable for consequential damages, and "requests that the [c]ourt narrow [the] case to what is actually in dispute: whether [defendant] breached the [warranty] by not paying the $34,664.43 cost to repair the turbocharger failure experienced by" plaintiff's truck no. 92. (#6 at 8–10.) It notes that the warranty, attached to its motion, explicitly "states, in bold and capitalized font, [that defendant] IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES." *Id.* at 8 (citing #6-1 at 5).

Plaintiff's claim for consequential damages under count II will not be dismissed at this juncture. The district court has explained that "[Mass. Gen. Laws. ch.] 106, § 2-715, the Massachusetts codification of the Uniform Commercial Code, permits a buyer to recover incidental and consequential damages caused by a seller's breach. However, section 2-719(3) of the Code allows the parties to limit or exclude such recovery unless the limitation is

unconscionable." *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1195 (D. Mass. 1990) (citations omitted). "A determination of whether a contractual provision is unconscionable . . . is an 'intensely factual question with both procedural and substantive components[.]'" *Cape Cod. Commercial Linen Serv., Inc. v. Diamond Chem. Co.*, No. 13-10380-DJC, 2014 WL 268678, at *4 (D. Mass. Jan. 24, 2014) (quoting *In re DiMare*, 462 B.R. 283, 307 (Bankr. D. Mass. 2011)) (issue of whether warranty term limiting liability was unconscionable "should be determined on a developed record"); *see also Stratus Techs. Bermuda Ltd. v. EnStratus Networks, LLC*, 795 F. Supp.2d 166, 169 (D. Mass. 2011) ("factual disputes cannot be resolved with a motion to dismiss").

C.  Count III: Unfair and Deceptive Insurance Practices Pursuant to Mass. Gen. Laws chs. 176D and 93A.

Defendant argues that plaintiff does not have a private right of action under Mass. Gen. Laws ch. 176D, and that plaintiff fails to plead sufficient facts to show that defendant acted in a sufficiently "extreme or egregious manner that would entitle" it to relief under Mass. Gen. Laws ch. 93A. (#6 at 4–8.) Defendant is correct that plaintiff fails to state a claim under Mass. Gen. Laws ch. 176D, as the statute "provides no private cause of action and is enforceable only by the commissioner of insurance." *Salvati v. Am. Ins. Co.*, 855 F.3d 40, 49 (1st Cir. 2017) (internal citation and quotation marks omitted).

Defendant also correctly points out that plaintiff cannot use chapter 93A, §11 to attempt to recover for alleged violations of chapter 176D. *See id.* ("When bringing a claim under [c]hapter 93A, which encompasses unfair and deceptive insurance practices, a plaintiff may argue that an insurer acted in violation of [c]hapter 176D. However, to the extent that [the count] attempts to state an independent claim for recovery under [c]hapter 176D, it must fail."); *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754 (1993) (citations omitted) ("[section] 11 does not grant

an independent right to recover for violations of [Mass. Gen. Laws ch.] 176D, § 3(9)"); *see also Redstar Entm't, LLC v. Sentinel Ins. Co.*, No. CV 18-11127-DJC, 2019 WL 1118514, at *3 (D. Mass. Mar. 11, 2019) ("commercial plaintiffs may not make a claim under chapter 93A[,] § 11 that is premised on a *per se* violation of 176D").

However, plaintiff still has an independent cause of action under chapter 93A. Mass. Gen. Laws ch. 93A, § 11 "provides a private cause of action to a person who is engaged in a business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business." *Malden Transp., Inc. v. Uber Techs, Inc.*, 404 F. Supp.3d 404, 418–19 (D. Mass. 2019) (quoting *Manning v. Zuckerman*, 444 N.E.2d 1262, 1264 (Mass. 1983)). Such unfair or deceptive acts may "arise in dealings between discrete, independent business entities[,]" as is the case here. *Exxon Mobil Corp. v. Attorney Gen.*, 479 Mass. 312, 316 (2018) (quoting *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 155 (2013)).

To establish liability under chapter 93A, "commercial plaintiffs must prove 1) that defendants engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [Mass. Gen. Laws ch. 93A, § 2],[4] or the regulations promulgated thereunder; 2) a loss of money or property suffered as a result[;] and 3) a causal connection between the loss suffered and the defendants' unfair or deceptive method, act[,] or practice." *Malden Transp.*, 404 F. Supp.3d at 418 (citing *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014), *appeal filed* Oct. 10, 2019. "[T]o establish unfairness under [c]hapter 93A, § 11, plaintiffs must prove that the alleged unlawful conduct falls 'within at least the penumbra of some common-law, statutory, or other concept of unfairness; is immoral, unethical,

---

[4] In evaluating whether an action is considered unfair or deceptive, courts should "be guided by the interpretations given by the Fair Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))[.]" Mass. Gen. Laws ch. 93A, § 2(b).

oppressive, or unscrupulous; and causes substantial injury to consumers [or business entities].'"
*Id.* (internal citations and quotation marks omitted). In making the unfairness determination,
"courts consider the totality of the circumstances, which includes the nature of the challenged
conduct and the purpose and effect of that conduct, the standard of the commercial marketplace,
and the equities between the parties, including what *both* parties knew or should have known." *Id.*
at 419 (emphasis added) (internal citations, quotation marks, and alterations omitted); *see also City
of Beverly v. Bass River Golf Mgmt.*, 92 Mass. App. Ct. 595, 605 (2018). "Practices may be deemed
deceptive where they 'could reasonably be found to have caused a person to act differently from
the way he otherwise would have acted[,]'" or if they "tend[] to mislead." *City of Beverly*, 92 Mass.
App. Ct. at 605–06 (internal citations and quotation marks omitted); *see also Shire City Herbals,
Inc. v. Blue*, 410 F. Supp.3d 270, 298 (D. Mass. 2019) (quoting *Peabody Essex Museum, Inc. v.
U.S. Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015) ("To be actionable, the challenged misconduct
must rise to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or
similar level of 'rascality' that 'raises an eyebrow of someone inured to the rough and tumble
world of commerce.'")). "[A] mere breach of contract, without more, does not amount to a claim"
under chapter 93A, § 11. *City of Beverly*, 92 Mass. App. Ct. at 606.

>   Here, plaintiff alleges that defendant:
>
>   owed duties to [plaintiff] to disclose all terms of coverage before [plaintiff]
>   purchased [the warranty plan]; to refrain from deceptive advertising of its warranty
>   coverage; to affirm or deny coverage within a reasonable time; to effectuate prompt,
>   fair[,] and equitable settlement of [plaintiff's] claim after coverage became
>   reasonably clear; and to explain the rationale underlying its decisions as to the
>   existence of coverage.

(#10 at 36.) In addition to breaching the warranty without any apparent justification, plaintiff
alleges that defendant intentionally failed to inform it that it would not be paying its claim for over
six months, from early March 2019 to late September 2019, despite plaintiff's multiple requests

for clarification, causing plaintiff to lose the use of truck no. 92 for over nine months and incur a substantial financial loss. *Id.* at 32–33, 37–38. This was after defendant allegedly failed to disclose to plaintiff that the warranty did not cover "pre-existing" failures, despite the fact that it required all the trucks in plaintiff's fleet to pass an engine inspection before issuing coverage. *Id.* at 37–38. Plaintiff alleges that, had it known of these "hidden or undisclosed warranty terms[,]" it would have never purchased warranty coverage. *Id.* at 38; *see also* #9-1 at 13 ("[a]side from breaching the [w]arranty, [defendant] hid the facts, obscured the warranty terms, attempted to deceive [plaintiff,] and abuse its leverage").

Based on these alleged facts, a reasonable inference could be drawn that defendant's conduct, in failing to inform plaintiff that it was denying coverage, was unfair, and that defendant's failure to disclose the full contents of the warranty was deceptive in that it would "mislead" plaintiff into entering into the warranty agreement. *See City of Beverly*, 92 Mass. App. at 606 (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991)) ("conduct 'in disregard of known contractual arrangements' . . . constitutes an unfair act or practice"). Plaintiff also clearly alleges that it suffered a loss of money or property, and that there was a causal connection between its loss and defendant's actions. *See Parker*, 935 F.3d at 18 (quoting *Twombly*, 550 U.S. at 556) (surviving a motion to dismiss requires only alleging "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct").[5]

---

[5] Defendant also attaches a copy of plaintiff's 93A demand letter to its motion, arguing that plaintiff's "[d]emand [l]etter shows that [plaintiff] knew the fact and basis of [defendant's] denial as early as March 7, 2019 (approximately three weeks after [plaintiff] first brought truck no. 92 to the Pete Store to fix the mechanical issues." (#6 at 7–8 (citing #6-2).) Specifically, plaintiff indicates in its demand letter, dated January 8, 2020, that, after receiving truck no. 92's service records, defendant "claimed on March 7, 2019 that the turbo charge failure was due to a previous repair improperly performed and denied coverage." (#6-2 at 3.)

   Because the language within the demand letter appears ambiguous, what plaintiff knew and when are factual issues inappropriate for evaluation at the motion to dismiss stage.

V. <u>Conclusion</u>

For the reasons stated above, defendant's motion to dismiss is GRANTED to the extent that plaintiff's claim for declaratory relief (count I) and plaintiff's claim for unfair and deceptive practices pursuant to Mass. Gen. Laws ch. 176D, § 3 (within count III) are DISMISSED. Defendant's motion to is DENIED in all other respects.

November 23, 2020                                   <u>/s/ M. Page Kelley</u>
                                                    M. Page Kelley
                                                    Chief United States Magistrate Judge

13